The opinion of the Court was delivered April term, 1822, at Ipswich, by
Wilde, J.
No question has been made as to the loss on the vessel in this case ; but the defendants resist the claim for a partial loss, and object also to some of the charges of general average. The Jason, it appears, having put into the Isle of France in distress, *386 was there totally lost in a hurricane. The cargo, which had been discharged before the ship was wrecked, was transported to Amsterdam, the port of destination, in a Dutch ship hired for that purpose at the Isle of France by the master. The extraordinary expenses thus incurred, deducting therefrom the estimated cost of transportation by the Jason, if she had not been lost, constitute the plaintiff’s claim for a partial loss.
It is generally true, that the underwriters on the cargo have nothing to do with the freight. They only guaranty the safe arrival of the goods, and have no concern with the expense of transportation (7). But Marshall observes that, “ if, in the course of the voyage, the ship be disabled, by stress of weather, or any other peril of the sea, and a new vessel is hired for the transport of the goods ; in such case the insurers shall pay all average losses on the goods, the expense of salvage, unloading, warehousing, and reloading, together with all duties that may have been [ * 476 ] paid, and the increase of freight, if any (8). No * English case or authority is cited by Marshall, in support of this observation ; but he refers to Fmerigon, whose opinion is certainly of high authority. It is, however, opposed by Valin, who thinks that the additional expense of transportation ought to fall on the owner of the vessel; and Chirac considers it as general average.
But the observation of Marshall, if rightly understood, and with the limitations which fairly belong to it, is not inconsistent with the principles of the law of insurance. As I understand his remark respecting increased freight, it is no more than this; that the underwriter on goods is liable, whenever the freighter is compelled to pay such increased freight, by the unavoidable consequence of any of the perils insured against. And in this sense it agrees with the opinion of the Court in the case of Mumford vs. The Commercial Insurance Company, cited in the argument, which no one, I think, can doubt was rightly decided. That was a case of insurance on goods from Amsterdam to New Yorlc. The ship, during her voyage, was captured by a British ship, and sent to Halifax. The ship and cargo were libelled in the Vice-admiralty Court there. The ship being acquitted, and the cargo detained for further proof, the master made a tender of the ship to bring on the goods, whereby the ship-owner became entitled to full freight. The goods were afterwards released, and the underwriters were held liable for the expense of their transport to New Yorlc. If the underwriters were not liable in such a case, the loss must fall on the owner of the *387 goods; and the contract of insurance could no longer be called a contract of indemnity.
But the case alluded to does not apply to the one under consideration, for two reasons. The one is, that in this case there has been no increase of freight in consequence of the loss of the Jason. If she had completed her voyage, her freight would have amounted to 9000 dollars; and it was proved, at the trial, that half the freight was earned on her arrival at the Isle of France; so that the * freight she would have earned on her passage from [ * 477 ] thence to Amsterdam, if she had met with no disaster, would have been 4500 dollars, and the Dutch ship was hired for a less sum.
If, however, the Dutch ship had cost more, the underwriters would not have been liable; because the extra expense would have fallen upon the ship-owner, and not on the owner of the goods. The ship-owner was bound to provide a new ship, after the loss of the Jason; and if he had refused so to do, he could have claimed no freight for the transportation of the goods to the Isle of France. We must therefore consider the master as acting for the ship-owner in hiring the Dutch ship; and that the owner of the goods was bound to pay only the stipulated or customary freight from Siam to Amsterdam. But if we were to consider the master as the agent of the owner of the goods, and as refusing to act for the ship-owner, then, the freight previously earned being forfeited, the freighter would only be bound to pay for the hire of the Dutch ship, which was less than half of the customary freight from Siam to Amsterdam.
It can make no difference to the underwriters, that the plaintiff’s testator was owner both of vessel and cargo. He might have insured the freight; but surely his having neglected so to do, will not enlarge the responsibility of the underwriters on the cargo. The only loss the plaintiff has sustained is the loss of the vessel and part of the freight; and this certainly can, by no principle, be thrown upon the insurers of the goods.
We are next to consider the questions as to general average. The first charge objected to is, for three months’ extra pay to part of the crew at the Isle of France. This was demanded by the American consul, who seems to have misconstrued the law relating to the discharge of seamen in foreign ports. This loss, therefore, arose, partly from the mistake of the consul, and partly from a casualty, viz., the loss of the vessel. It was not the necessary consequence * of putting into the Isle of France; [ * 478 ] it is not, therefore, a charge of general average. If chargeable at all, it must be charged to freight.
*388 The board of the master, while on shore, ought to be allowed; but not his commissions on disbursements. Nor can there be any allowance for the agio, or premium of exchange, on the amount paid and advanced in the Isle of France; as it appears that payment was made in currency or bank paper, which, about the time of payment, was paid at par for bills drawn payable in the United States.
As to the loss sustained by the sale of the ten bales of cotton, this would have been a partial loss, if it had appeared that such sale was necessary. Unless such necessity appears, the master has no authority to sell the cargo, or any part of it, at an intermediate port (9). It was in evidence at the trial, that these bales of cotton could not be put on board the Dutch ship; but it does not appear that they could not have been sent by some other vessel; and it belongs to the plaintiff to show this, in order to justify the sale (10).
The property to contribute will be, the net sales of the cargo, deducting the customary freight from Siam to Amsterdam; the net salvage of the vessel, and freight from Siam to Amsterdam, deducting what was paid to the Dutch ship.
Whatever the plaintiff may be entitled to recover upon these principles, the defendants claim to deduct therefrom the amount of the premium note, agreeably to a stipulation in the policy. The plaintiff’s counsel consider this stipulation as applicable only to cases of voluntary adjustment made by the parties. But it has been other wise decided in the case of Livermore vs. The Newburyport Marine Insurance Company (11) ; and we can see no sufficient reason for overruling that decision.

 Marsh. 628, Bailie vs. Modigliani.—3 Caines, 155.

 Marsh. 379

 10 East, 143, 378.

 9 Johns. 28.

 2 Mass. Rep. 232.