Adm'r of Aldrich *v.* Hapgood et al.

A. E. FULLER, *Administrator of* R. ALDRICH *v.* JONATHAN HAP-GOOD AND LEONARD HOWARD.

[ IN CHANCERY. ]

*Promissory Note. Principal and Surety. Evidence. Assignment.*

P. was indebted to each of the defendants, severally, and they were holden as sureties on several notes for P., some jointly and some severally, and one of the defendants, H., was also surety for him on two other notes with A. P. failed and his property was attached; thereupon P., on consultation with the defendants, executed to them a note for $1100. which was sued and P.'s property attached subject to the prior attachment. The note was first drawn for $900. which was estimated by P. and the defendant J., the other being absent, as sufficient to cover P.'s indebtedness to them, and their joint and several liability on his notes. J. did not know of H.'s liability with A., and this was not regarded in the estimate. Before signing the note P. saw H. about the matter, and H. reminded P. of his liability as surety on a note of $400. with A., but forgot about the other note on which he stood with A. P. then agreed to add $200. to the note to secure H. for his liability to pay the half of said note of $400. but declined to add anything for the security of A., and accordingly the note for $1100. was executed for such purposes. *Held,* that what was realized on said note should be applied so as to carry out the intention in making it, and this would be accomplished by applying nine elevenths of the proceeds upon the debts of the defendants against P., and their liabilities for him on notes, exclusive of H.'s liability with A., and by applying two elevenths upon said note of $400.

The application on the note of $400. operates equally for the benefit of H. and A., upon the well settled principle in this state, that when one of two co-sureties takes security of the principal, the other shall have equal benefit therefrom.

The defendants should first be allowed to deduct from the amount received their just costs and expenses, incurred in good faith, in collecting the note and making it available.

The day after the execution of the note for $1100., the defendants finding they were not fully secured, applied to P. for further security, and P. made a written assignment of his notes and book accounts to J., H. and A., "to secure them for having signed and become liable for me on my paper." Parol evidence was taken, under objection, tending to show that it was understood between P. and J. at the time the assignment was executed, (they being the only parties present,) that the assignment was to operate for the benefit of A., only in respect to the note of $400. *Held,* that the evidence was not admissible.

Parol evidence was not admissible to vary the legal import of the language used, which was to secure the assignees named, in the proportion of their respective liabilities.

39

BILL IN CHANCERY. The case was heard upon bill, answer and testimony, at the April Term, 1866, when a *pro forma* decree was rendered dismissing the bill, and the orator appealed. The material facts in the case are sufficiently stated in the opinion of the court.

*Butler & Wheeler* for the orator.

*A. L. Miner,* for the defendants.

The opinion of the court was delivered by

PIERPOINT, Ch. J.    It appears from the bill, answers and proof that on the 18th of July, 1860, one Polly was indebted to each of the defendants, severally, in sums in regard to the amount of which there is no controversy. The defendants were at the same time liable as sureties for the said Polly on several notes held by the Battenkill Bank. On some of these notes both the defendants were liable as sureties jointly, and on some each was separately liable, and on one the defendant Howard was liable as surety with one Aldrich, the plaintiff's intestate.    The defendant Howard was also liable with said Aldrich as surety for said Polly on a note to the West River Bank.

At about the time above named Polly failed, and his property was attached by one of his creditors.    Thereupon Polly, on consultation with the defendants, executed to them a note for $1100., which was sued, and Polly's property attached subject to the prior attachment. As the result of this suit, a sum of money was realized upon this note.    And the first question that arises is as to the distribution of such money as between the defendants and Aldrich's estate.

It appears that when Polly failed the defendants called upon him for security for their debts and liabilities, and in an interview between Hapgood and Polly, (Howard, at the time, being sick and not present) it was arranged that Polly should give a note to both of the defendants for $900., which they estimated would be sufficient to cover the several debts due by Polly to the defendants and notes to the Bat-

tenkill Bank, on which they were jointly liable, and also those on which each was severally and solely liable, Hapgood being then ignorant that Howard was liable with Aldrich on any note to the Battenkill Bank, or the West River Bank. And a note was drawn for the $900.; before signing it Polly said he would go and see Howard on the subject, and did so. On Polly's informing Howard what arrangement had been made between him and Hapgood, Howard then said : "there is also a note to the Battenkill Bank for $400. that I am liable on with Aldrich." Polly thereupon agreed to add $200. to the note to secure Howard for his liability to pay the half of said note, but declined to add anything for the security of Aldrich in respect to said note, saying he was able to pay his half of it, and accordingly the said $1100. note was executed to the defendants for such purposes. Nothing was said about the note to the West River Bank, and no attempt was made to secure Howard for his liability thereon, Howard, at the time, not thinking of it.

No question is made as to the right of Polly to secure the defendants for such debts and liabilities as he chose. The questions then are, what did Polly intend to accomplish by this transaction, and what was its legal effect?

We think it perfectly clear from the answers and evidence in the case that it was the intention of Polly, and the understanding of the defendants, that $900. of the note of $1100. was for the security of the debts he owed to the defendants, severally, and for the security of their joint liabilities, and their several sole liabilities to the Battenkill Bank, as sureties for Polly, and that $200. of said note was to secure the said Howard for his liability as joint surety with Aldrich for Polly on the said four hundred dollar note to the Battenkill Bank. This being so it is manifest that the money realized upon this eleven hundred dollar note must be so applied as to carry out this intention, and that is accomplished by applying nine elevenths of the proceeds of that note upon the debts of the defendants against Polly, and their liabilities for him to the Battenkill Bank, exclusive of the said four hundred dollar note, and by applying two-elevenths upon the said four hundred dollar note.

In making such application upon the four hundred dollar note it operates equally for the benefit of Howard and Aldrich's estate. The principle being well settled in this state, that when one of two co-sureties takes security of the principal, the other shall have equal benefit therefrom.   The legal effect in this respect being the same, as though the principal had made a payment of the same amount directly upon the note itself, and although the principal intends that it shall operate only for the benefit of one, yet the law interposes and applies it equally for the benefit of both.

It is claimed by the orator that the defendants, as between himself and them, should account for the whole amount recovered from the sale of Polly's goods, upon their execution, irrespective of the costs and expenses incurred by them in obtaining judgment upon the note and making the security available.   This, we think, is not correct. The defendants should first be allowed to deduct from the amount received their just costs and expenses incurred in good faith in collecting the note and making it available.   This, in fact, is all that they receive from Polly that operates as security to them, and is all that they should be required to account for, and it is of the balance only that the orator has the right to claim that the two-elevenths shall be applied upon the said note of $400.; what that amount is must be ascertained by a master.

It further appears that on the 19th day of July, 1860, ( the day after the execution of said note of $1100.,) the defendants feeling that they were not sufficiently secured applied to said Polly for further security, and it was arranged that Polly would assign for that purpose his notes and book accounts; and Polly and Hapgood went together to Manchester to transact the business.   On their arrival at Manchester and after considerable talk and negotiation between Polly, Hapgood and Burton, (one of the directors of Battenkill Bank,) Polly executed and delivered to said Hapgood an assignment in the words and figures following:—" For value received I hereby assign and transfer to Jonathan Hapgood, Leonard Howard, of Peru, and Russell Aldrich, of Londonderry, all the book accounts due and owing to me on the books in my store, in Peru, against various indi-

Adm'r of Aldrich *v.* Hapgood et al.

viduals therein named, and also certain notes herewith delivered to said Hapgood, Howard and Aldrich, to secure them for having signed and become liable for me on my paper.

July 19th, 1860. (Signed,) WM. E. POLLY."

This instrument, upon its face, is an assignment for the benefit of the three persons therein named for all their liabilities as surety for said Polly, and its legal import confessedly is, to secure such persons in the proportion of their respective liabilities.

Parol evidence has been taken (under objection) tending to show that such was not the intention of Polly, and that it was understood between Polly and Hapgood at the time the assignment was executed, (they being the only parties present,) that it was to operate for the benefit of Aldrich, only in respect to the four hundred dollar note to the Battenkill Bank.

Parol evidence would be admissible to show the amount that each of the parties named was liable for, as the paper is silent on the subject; but parol evidence is no more admissible to vary the legal import of the language used in a written instrument, than it is to vary or add to the language itself; to do the one, is, in effect, to do the other, the result in either case being the same. We think this evidence was not admissible for the purpose for which it was offered, and is not to be taken into consideration, but the rights of the parties under the assignment are to be determined by the legal construction of the paper itself, and what that is has been already indicated.

The result is the *pro forma* decree of the chancellor is reversed and the case remanded, with directions that a decree be entered that the defendants account, and a reference to a master to ascertain the net amount received by the defendants on the note, of $1100. after deducting their costs and expenses, and the amount realized by them under the assignment, and also the whole amount of the liabilities of the orator and the defendants, as sureties for the said Polly, either jointly or severally, at the time of said assignment, and when the necessary facts are thus ascertained,to app ly two-elevenths of the net amount received upon the said note of $1100., after deducting said costs and expenses upon the said note of $400. to the Battenkill Bank for the joint

benefit of said Howard and the orator, and to apportion the net amount received by the defendants under the assignment, between them and the orator in proportion to the amount of their respective liabilities as sureties for the said Polly, taking into account the amount already received by the orator from that source, and to make such a decree either by injunction or otherwise as shall be found necessary to effectuate the end indicated, and secure the rights of all parties.