## PUTNAM *v.* OSGOOD.

Declarations of one in the possession of personal property that it is owned by another are competent evidence in favor of the person declared to be the owner, against an officer who has attached it as the property of the declarant.

Where one of two sureties is secured by a mortgage of chattels which are subsequently attached, and the mortgagee upon a demand renders an account, stating his liability at the full amount due without referring to his co-surety, evidence of the responsibility of the other surety for his share does not tend to prove the falsity of the account.

In an action between a mortgagee of chattels and an attaching officer, the officer offered his return "as evidence of what he did with the property," and the presiding judge excluded it:—*Held*, that the court, it not appearing that what was done with the property was material, could not say this was erroneous.

An agreement or understanding between a mortgagor and mortgagee of chattels, though made after the execution of the mortgage, that the mortgagor may sell the mortgaged property, or a part of it, on his own account, renders the mortgage void as to creditors, and such agreement or understanding will be proved by evidence that the mortgagor did so sell with the knowledge of the mortgagee, and without objection on his part.

REPLEVIN, by Alonzo W. Putnam against Joseph D. Osgood, for a stock of goods in a general assortment store; also, for a horse, carriages, sleighs, and a lot of wood. Writ dated March 30, 1867; date of service, April 19, 1867.

The plaintiff's title was a mortgage dated February 8, 1867, of the goods in the store at that date, and of the other articles, from one Parker M. Child, given to the said plaintiff to secure a note of the same date for $3,700, from Child to Putnam; also, to secure a liability for said Child, incurred by Putnam, by signing another note for $2,000, to George Leslie or order, with one Dwight P. Child, as sureties for said Parker M. Child. The defendant, February 22, 1867, attached all the goods and other articles in and about the store, on a writ in favor of one Joshua S. Blaisdell against said Parker M. Child, on a valid claim of said Blaisdell against said Child, of some $2,700, at that date, and, upon March 1, demanded an account under oath of said Putnam of the amount due upon the debt or demand secured by said mortgage; and on March 6, the plaintiff rendered an account stating that the whole amount of both notes and interest was then due. The evidence tended to show that the said Child, at the date of the mortgage, was indebted to said Putnam upon notes and account, in

the sum of $3,653, and that Putnam at that time paid Child in cash $47, to make it even hundreds, and took the note for $3,700 ; but that Putnam was also at the same time indebted to said Child on account in the sum of $303.65, due December 19, 1866, and also the sum of $65.17 for goods delivered to Putnam after December 19 and before the mortgage, which sums were not included, or deducted, or in any way reckoned, allowed, or accounted for, at the time of the mortgage. The evidence also tended to show that before Putnam rendered his account to Osgood of the amount due upon his mortgage, on or about said December 19, and before January 2, 1867, this same sum of $303.65 had been applied in payment to that extent of the mortgage debt (though on this point the evidence was conflicting), and also that Child had delivered to Putnam, after the date of the mortgage and before Putnam rendered his account, goods to the amount of $37.41, which were to go in payment of the mortgage debt, and which were not allowed or deducted in making up the account. Putnam testified that at the time of making the mortgage, Child had not his books of account present, and that the amount charged against him on said books was not thought of by him, and was not mentioned or alluded to by Child ; that the business was done in a hurry, and this matter was thus omitted ; and that the sum of $303.65 had been adjusted and applied in another way before the date of the account, but after the attachment, and that in making his account he inadvertently omitted to deduct the $37.40 ; that it did not occur to him at the time that there was any such account to be deducted. It appeared that Child had bought several small bills of goods, which he had put into his store after the date of the mortgage and before the attachment by Osgood, which goods were mingled with the mortgaged goods by said Child. There was a lot of wool in a separate room in the store buildings at the time of the attachment of the goods by Osgood, which was at first attached by him and afterwards given up by him to Putnam, which Putnam claimed to own, and that Child had bought for him on commission, he (Putnam) having furnished Child with the money to pay for the same. This wool was not included in this writ of replevin. But a question was raised on trial as to its ownership at the time of the attachment. Upon this question the court permitted one J. D. Child to state, subject to the defendant's exception, that in the summer or fall of 1866, while Parker M. Child was purchasing this wool, he heard said Parker M. Child say (while he had said wool in a room in his store) that he was buying the wool for Putnam, that Putnam furnished the means, and that Putnam owned the wool.

The defendant offered to show that Dwight P. Child was in 1866, and now is, a responsible party, which the court excluded ; and the defendant excepted. The defendant's counsel offered the return of the defendant as deputy sheriff, upon the writ Blaisdell against Child, as evidence of what he did with the property attached on the writ ; but it was excluded, the defendant excepting. The defendant claimed that, at the date of the mortgage, Child's indebtedness to Putnam was less

than $3,700, by the aforesaid sums of $303.65 and $65.17=$368.82, and that the mortgage was to that extent a cover of Child's property, and thus tended to delay creditors. The court instructed the jury on that point, that if there was a design on the part of Child and known to Putnam thus to cover up any of his property to delay or defraud his creditors, that would make the mortgage void as against such creditors; but if no such design or intention existed, and the mortgage was made to secure a debt larger than was really due (by inadvertence and mistake), and there was in fact an honest indebtedness which the parties in good faith intended to secure, then the mortgage would still be good and valid. The defendant also claimed that, as the plaintiff had not applied any of those sums in payment to that extent of Child's indebtedness to him at the time when he rendered the account in answer to the legal demand of the amount due upon his mortgage debt, he was at least guilty of culpable negligence, if not actual fraud, in not so doing, and therefore that the account was false within the meaning of the law.

The court submitted certain questions to the jury, and directed them to answer these questions in addition to their general verdict, which questions and the answers to the same were as follows:

1. Was this mortgage from Child to Putnam, of February 8, 1867, given and received in good faith to secure an honest debt and liability described in the condition of said mortgage? *Answer.* Yes.   2. Was said mortgage given by said Child for the purpose of defrauding or delaying his creditors, and was that purpose known to Putnam? *Answer.* No.   3. At the time said mortgage was given, was it understood by both parties that Child should go on and sell the goods mortgaged, on his own account, the same after the mortgage as he had done before? *Answer.* No.   4. Was the account rendered by Putnam to Osgood, of March 5, 1867, rendered in perfect good faith by said Putnam, and with all reasonable efforts on his part to make it just and correct? *Answer.* Yes.   5. Did Putnam know that Child had brought other goods into the store after the date of the mortgage, and mingled these goods with those in the store which were included in the mortgage, or was Putnam in fault for not knowing it? *Answer.* No.

The court instructed the jury that if the account was rendered in perfect good faith and with all reasonable efforts on Putnam's part to make it just and correct, then, though the account might be incorrect in fact, it would not be false within the meaning of the statute. It also appeared that, from the time of making the mortgage down to the time of the attachment, Child had continued to sell these goods thus mortgaged on his own account, just as he had been doing before the mortgage, selling in that time some $600 worth of goods; that this was done with the full knowledge of Putnam and without any objection from him: but the court held, and instructed the jury, that this would not be sufficient to invalidate the mortgage, unless such understanding existed at the time when the mortgage was made; to which instructions the defendant excepted. Verdict for the plaintiff for all

the goods contained in the mortgage, and for the defendant for the value of all which were not thus contained in the mortgage, which verdict, so far as it was in favor of the plaintiff, the defendant moved to set aside, on the ground of the foregoing exceptions, and also upon the ground that the same was against the law and the evidence in the case. The court overruled the motion to set aside the verdict as against the evidence, *pro forma*, and the defendant excepted, the court reserving all questions of discretion to be considered by the full bench. Putnam testified that, at the time the mortgage was made, nothing was said about Child continuing to sell the goods by any one ; that the matter was not thought of by him at all ; that the thought never entered his mind, at the time the mortgage was made, whether Child was to go on and sell the goods or not, one way or the other ; that there was no understanding about it either way, at that time.

If, upon the evidence stated in the above case, there remains any doubt as to the proper exercise of the discretion of the court in overruling the motion to set aside the verdict as against the evidence, the case was to be amended by stating all the evidence in the case that either party desires to have incorporated into it.

*Felton* and *Carpenter* (with whom were *H. & G. A. Bingham* and *G. F. Putnam*), for the plaintiff.

*T. J. Smith* and *C. W. & E. D. Rand*, for the defendant.

BELLOWS, C. J. The first question is as to the admissibility of the statements of Parker M. Child, as testified to by J. D. Child.

When Parker M. Child made these statements he was in the possession of the wool of which he spoke, and what he said was in disparagement of his own title, and went to show that the wool was purchased by him for the plaintiff, and belonged to him. The possession of the wool was *prima facie* evidence of title in Child, and his declarations that he held it in subordination to the plaintiff was against his interest ; and upon that ground such declarations have been held to be admissible. It has been distinctly so held in this State in the case of *Rand* v. *Dodge*, 17 N. H. 358. In that case the title of real estate was in question, and the only evidence of possession in the plaintiff were the declarations and entries of a person in the actual possession, tending to show that he was in under the plaintiff's ancestor, and for that purpose his verbal declarations and various entries on his books of debit and credit, tending to show that he was managing the land as agent, were received. The same doctrine was recognized in *Peaceable* v. *Watson*, 4 Taunt. 16, and is also laid down as the law in 1 Greenl. Ev., sec. 109, and cases cited. *Holloway* v. *Rakes* is cited by BULLER, J., in *Davis* v. *Peirce*, 2 T. R. 55, as deciding that the declarations of a tenant in possession, that he held under the devisor of the plaintiff, were admissible to show possession in the devisor. A similar doctrine is held in *Carne* v. *Nicoll*, 1 Bingh. N. C. 430. The doctrine, in fact, is well settled in

our own State.   It is recognized and acted upon in *Spence* v. *Smith*, 18 N. H. 587.   It is applied also in the case of personal property, as in the case of real estate.   *Woods* v. *Blodgett*, 18 N. H. 249 ;  *Walcott* v. *Keith*, 22 N. H. 212 ;  *Bradley* v. *Spofford*, 23 N. H. 444, and cases cited. So the declarations of the person in possession are admissible, although he himself is alive and in condition to testify.   *Woods* v. *Blodgett*, 18 N. H. 249.   We are of the opinion, then, that there was no error in admitting the testimony of J. D. Child.

The next question is as to proof of the responsibility of Dwight P. Child, the plaintiff's co-surety on Parker M. Child's note of $2000, the mortgage in question being made to secure the plaintiff against his liability on that note.

I am unable to see how this inquiry was material.   It is true, as suggested by the defendant's counsel, that Dwight P. Child was equally liable with the plaintiff, and might be made to contribute, if able to do so ; but the plaintiff's right to take security against his liability could not be in the least degree affected by the responsibility or want of it of his co-surety.   It is urged by the defendant's counsel that the inquiry was proper because the account rendered ought to have stated the fact, if the co-surety was able to contribute his share.   It does not appear by the case whether he did fully describe that note or not, nor is any point made of it.   Besides, the statute only requires an account of the amount due and liabilities secured, and does not require a description of other securities held by the mortgagee for the same debts and liabilities ; and in view of the highly penal character of these provisions, we should not feel at liberty to enlarge by construction the obligation of the mortgagee beyond the plain requirements of the statute.   Besides, this mortgage having been taken before the plaintiff was damnified, his co-surety is entitled to share in the security.   *Brown* v. *Ray*, 18 N. H. 102 ; *Low* v. *Smart*, 5 N. H. 353 ; *Currier* v. *Fellows*, 27 N. H. 366. The case of *Hall* v. *Cushman*, 16 N. H. 463, holds a somewhat different doctrine, especially where the sureties have paid the debt and adjusted their shares between them, before a mortgage to one is taken ; but this case, so far as respects mortgages taken before the sureties have been damnified, is overruled by the subsequent case of *Brown* v. *Ray*, 18 N. H. 103, both opinions having been given by judge PARKER.   It will be perceived, also, that no authorities were cited for the opinion in *Hall* v. *Cushman*, and it is not certain that it was not intended to be limited to cases where the sureties had paid the debt and divided the amount between them, and afterwards one had taken security for the repayment of the amount paid by himself.   Such a limitation might well be inferred from the decision in *Brown* v. *Ray*, which was made by the same judge about eighteen months later.   The general doctrine, that securities taken by one surety enure equally to the benefit of his co-sureties, is well established.   1 Story Eq., sec. 499, note 2 ; 4 Kent's Com., 9th ed., note 6, and cases cited ; *Bachelder* v. *Fiske Exrs.*, 17 Mass. 470 ; *Fuller* v. *Hapgood*, 39 Vt. 617.   The right to contribution is not understood to spring from contract, but is a doctrine of

equity, founded upon the equality of burthen, from which is deduced the obligation to hold securities received by one for the benefit of all the sureties. With this view of the law, it is obviously immaterial whether the plaintiff's co-surety was responsible or not.

In respect to the officer's return, to show what he did with the goods attached, enough is not stated to show whether it was material or not. If offered to prove the attachment, it would have been competent, clearly; but that cannot have been the purpose, for that appears otherwise in the case very distinctly. Until it is made to appear that what was done with the property was material, and that the return was evidence of it, we cannot say that there was error in the ruling on that point.

The great question in the case arises upon the instructions of the court. It appears that the mortgage to the plaintiff was made February 8, 1867, and the defendant's attachment was on the twenty-second of the same month. The case finds that from the time of the mortgage down to the time of the attachment, the mortgagor, Child, had continued to sell these goods, on his own account, just as he had been doing before the mortgage,—selling, in that time, some $600 worth of goods; and that this was done with the full knowledge of Putnam, and without any objection from him. The court held, and instructed the jury, that this would not be sufficient to invalidate the mortgage, unless such understanding existed at the time when the mortgage was made; and the jury have found that there was then no such understanding, and that the mortgage was made in good faith, and to secure an honest debt. This is precisely the question that was left undecided in the former opinion in this case, and its solution is not free from difficulty. Upon a careful consideration of the adjudged cases in this State and elsewhere, we are brought to the conclusion that the instruction on this point, without some qualification, was erroneous. As held in the former case, the selling of the goods by the mortgagor for his own benefit, was totally inconsistent with the avowed purpose of the mortgage, and if done in pursuance of an understanding between the parties when the mortgage was made, would invalidate it in respect to creditors. The jury having found that there was no such understanding at the time the mortgage was made, the question is whether such sales, with the knowledge and without the objection of the mortgagee, will have the same effect as if it had been agreed, when the mortgage was made, that a mortgagor might sell. The knowledge on the part of the mortgagee that these sales were being made, and no objection interposed, is equivalent to an assent to them; and it will be observed that the case finds that the mortgagor continued to sell the goods from the time of making the mortgage down to the time of making the attachment, so that the mortgage was no interruption to the sales; and in that state of things, the mortgagee, with a full knowledge of it, acquiesced.

The principles upon which this question is to be decided may be detected by considering the rules which govern the retention of the

possession by the vendor on the absolute sale of goods. There the retention of the possession by the vendor is always *prima facie*, and, if unexplained, conclusive evidence of a secret trust.. This is the doctrine of *Coburn* v. *Pickering*, 3 N. H. 415–425, which has since been followed, and must be regarded as the settled law of this State—see *Coolidge* v. *Melvin*, 42 N. H. 510, and cases cited; and it is equally well settled that, the trust being established, the sale is to be regarded as fraudulent and void as against creditors. Whether there was a trust, is a question of fact; but the trust being established, it is a conclusion of law that the sale is fraudulent and void as to creditors. Ordinarily, in the case of an absolute sale of goods, a trust will be presumed, with us, from the mere retention of possession by the vendor. In some States, as in Vermont and many others, the presumption is conclusive; in others, it is *prima facie* only, and may be rebutted by showing the sale to be *bona fide*, as in Massachusetts and some other States. The decisions, indeed, in this country are very conflicting and unstable on this subject. In New Hampshire, however, since the decision in *Coburn* v. *Pickering*, the rule has been steadily adhered to, that the retention of the possession by the vendor is always *prima facie*, and, if unexplained, conclusive evidence of a secret trust. By this it is not meant that the possession may be explained by showing that the sale was really in good faith; but a satisfactory reason must be shown for allowing the vendor to retain the possession of the goods, else it will be presumed that it was intended that he should have the use of them. What would be a sufficient explanation of the possession, as a general principle, has not been determined in this State. It has been decided, however, that it is not a sufficient explanation that the sale was at first without any trust, but that soon after, and before the goods were removed, it was agreed that the vendor might retain and use them, and pay rent therefor. *Coburn* v. *Pickering*, before cited. Nor that it was agreed that the vendor should store the property for a time for the vendee, and then transport and deliver it at another place. *Page* v. *Carpenter*, 10 N. H. 77. Nor that the vendor should retain and break the colt, which was the subject of the sale, and he retained it for seven months, and until it was attached. *Shaw* v. *Thompson*, 43 N. H. 130. But it was held to be a sufficient explanation, that the property was left until the vendor could procure the necessary means to remove it. *Morse* v. *Powers*, 17 N. H. 296. So, doubtless, it would be a sufficient explanation that the goods were at sea or at a distance, and possession taken as soon as they could be reached. Without some explanation of this kind, a trust will be conclusively presumed; and, as in all other cases of trusts, the sale will be held fraudulent and void as to creditors, without stopping to inquire what were the real motives and intentions of the parties; for it is well settled in New Hampshire that if the trust be established, the fraud is a conclusion of law,—as in the case of a sale absolute on its face, but with an agreement to reconvey on the payment of a sum of money, or with an agreement for the future support of the vendor.

In these cases, however clearly it may be shown that there was no intent to defraud creditors, the sales will be held void. *Coolidge v. Melvin,* 42 N. H. 510.*

These decisions go upon the ground that such trusts are inconsistent with good faith and fair dealing, and directly calculated to hinder and defeat creditors, and therefore should be held to be fraudulent *per se,* whatever may have been the motives of the parties in the particular case. In the case before us, the mortgagor was permitted to continue to sell the goods as before, immediately upon the execution of the mortgage, and to continue to do so at the rate of fifty dollars' worth daily until the attachment.

The sales made were of the goods mortgaged, and to a substantial amount, and were wholly inconsistent with the avowed object of·the mortgage, which was to secure a debt, while it was used simply to protect the mortgagor in the enjoyment and use of the goods, and to shield him from the claims of his creditors. It makes no difference whatever that the mortgagee may not have intended to hinder and delay the other creditors. It is enough that his acts would naturally produce that effect, and he must, in law, stand charged with it.

The instructions were, that these sales would not be sufficient to invalidate the mortgage, unless the understanding existed when the mortgage was made. We think, however, that no such distinction exists, or is applicable here. The case as it stands before us is, that the mortgagor proceeded to sell as before, from the time of making the mortgage, with the plaintiff's knowledge and without objection; and it may well be urged that this conclusively shows that such was the agreement. In *Coburn* v. *Pickering,* the agreement that the goods should remain in the vendor's possession was, as the case finds, made after the sale, but before the goods were removed, and they were accordingly retained and used by the vendor. There was evidence tending to prove that the sale was made to pay a debt to the vendee. The court directed a verdict for the attaching officer, assuming that the sale and subsequent agreement for the use of the goods must be·considered as one contract.

The ruling and direction of the court were fully sustained, the court, per RICHARDSON, C. J., holding that this was purely a question of law for the court, and that the fact of the agreement, in respect to the possession being made after the sale, afforded no sufficient explanation. He says the principle contended for by the plaintiff's counsel, that the original contract is to form the criterion by which the honesty of the sale is to be determined, stands in direct opposition to the rules which

---

* For the distinction between legal and equitable estoppels, see *Horn* v. *Cole,* 51 N. H. 290, 291.

BELL, C. J., strenuously dissented from the broad doctrine laid down in *Coolidge* v. *Melvin ;*—but see *Catlin* v. *Currier,* 1 Sawyer (U. S. C. C.) 7–14, and *Haynes* v. *Sanborn,* 45 N. H. 433.          REPORTER.

have long been applied to the subject; that " it stands wholly unsupported by authority, and seems to have made its appearance for the first time in this case. To give it any countenance in our courts would, in our judgment, take from creditors some of the most efficient means of detecting fraud, which human ingenuity has been able to invent." Indeed, we think it quite clear that the presumption arising from the retention of the possession, has never been understood to depend upon its having been agreed at the time of the sale that the seller should keep possession.

In *Twyne's case*, 3 Co. 81 *a*, it is laid down as one of the badges of fraud, that the " donor continued in possession, and used the goods as his own ; and by reason thereof, he traded and trafficked with others, and defrauded and deceived them." In fact, the selling of the goods, as in this case, is intimately associated with retaining the possession of them,—only, the permission to sell the goods on the vendor's own account has much more decidedly the character of a trust reserved.

The case of *Robbins* v. *Parker*, 3 Met. 117, is much in point. That was a mortgage of " all the hay, grain, and produce standing " on the mortgagor's farm ; and it appeared that the mortgagor used the hay and other produce on the farm, with the mortgagee's knowledge, and without any objection from him. The court held the transaction to be fraudulent and collusive, the court saying that the mortgagor used and consumed the property in the same manner as if no mortgage had been made, and without objection. In *Kendall* v. *Fitts*, 22 N. H. 7, EASTMAN, J., lays it down as the result of our decisions, that " all agreements or bargains, express or implied, which entered into the contract of sale, whereby the vendor should retain possession of the property for the advantage of either party, and not for the accommodation of the vendee, and all agreements and contracts to retain possession, made directly after the sale, either without changing the possession, or immediately after changing it, should be regarded as conclusive evidence of fraud." In *Edwards* v. *Harben*, 2 T. R. 595, it is laid down that unless possession accompanies and follows an absolute conveyance of goods, it is fraudulent and void. So is *Coburn* v. *Pickering*, and cases cited. So, in *French* v. *Hall*, 9 N. H. 145, it is laid down by PARKER, C. J., that, by the law of this State, to constitute a valid sale as against creditors, there must be a change of possession. So is *Clark* v. *Morse*, 10 N. H. 239 ; and *Hamilton* v. *Russell*, 1 Cranch 318, confirms the case of *Edwards* v. *Harben*.

In none of these cases is there the least countenance given to the position that there must have been an agreement at the time of the sale that the possession should remain in the mortgagor, in order to produce the effect suggested ; on the contrary, the language in which the rule is announced excludes such an idea. In *Jennings* v. *Carter*, 2 Wend. 449, it is held that a voluntary sale of chattels, with an agreement, in or out of the deed, that the vendor may keep possession, is—except in special cases and for special reasons, to be shown to and approved by the court—fraudulent and void as against creditors ; and

that where the possession is continued in the vendor without any agreement to that effect, the presumption of fraud is equally strong. These authorities show very clearly that the retention and use of the goods sold by the vendor have the same effect to avoid the sale, whether it was so agreed when the sale was made or not; and we think the same principle should be applied to the case before us. This being a recorded mortgage, the retention of the possession is not objectionable; but the selling of the goods mortgaged, with the assent of the mortgagee, occupies the same position in respect to the mortgage that the mere retention and use of the goods does in respect to an absolute sale. In the one case the vendor is in possession of the goods and using them, and in the other he has possession and sells them; and both are equally inconsistent with the avowed object of the respective conveyances.

The case of *Robbins* v. *Parker*, 3 Met. 117, is a direct authority to the point that the assent of the mortgagee, subsequent to the mortgage, to the consumption by the mortgagor of the property mortgaged, would render the transaction collusive and fraudulent. It is very obvious, indeed, that the substantial character of the transaction is the same, whether the agreement that the mortgagor may sell the goods be made at the time of the mortgage, or immediately after; and, as a means of sheltering the property of a dishonest debtor from the claims of his creditors, the latter method would be equally as effective as the other. The policy of the law is equally against both, and there is much reason to apprehend serious mischief from giving the least countenance to an agreement that a mortgagor might sell the goods on his own account, because the agreement was made subsequent to the mortgage. I am satisfied that such a distinction is not sustained by principle or authority.

It is urged that the law, which imposes a penalty upon a mortgagor for selling the goods without the written consent of the mortgagee, assumes that with such consent he may sell. It is true, he may so sell without being subjected to a penalty, but there is nothing in the act designed to change the law in respect to the validity of mortgages as against attaching creditors. That stands as it did before. It is urged, also, that it must appear that the sale was made with intent to defraud or hinder creditors, and that is so; but the trust being shown, the fraudulent intent is conclusively presumed. Again: the jury were told that the continuing to sell the goods with the plaintiff's knowledge and without objection would not invalidate the mortgage, unless such understanding existed at the time the mortgage was made. Now the fact of such selling was very strong evidence of an understanding when the mortgage was made that the sales might be continued, and, under ordinary circumstances, the jury ought so to have found; and therefore, without some qualification of that instruction, there was danger that the jury might be misled, and induced to give to this evidence less weight than it deserved, even if, as matter of law, the selling as the mortgagor did would not have invalidated the mortgage;

and, upon the whole, I think this instruction, as here stated, was calcu-lated materially to diminish the weight of that important testimony, unless there was some qualification not stated in the case, which is quite probable.

The instructions to the jury that, if the mortgage was made in good faith to secure an honest indebtedness, it would not be rendered invalid by including, by inadvertence and mistake, a greater sum than was really due, were correct. No authority has been cited, and we find none, to the effect that an innocent mistake as to the amount due shall avoid a mortgage. Such a doctrine would be very severe upon mortgagees, and finds no countenance from analogous cases. In the former opinion in this case, it was held that an account rendered by the mortgagee of the amount due on the mortgage debt, in perfect good faith, and with all reasonable efforts to make it correct, would not be a false account within the statute, because by accident or mis-take it was made too large. If the mortgage is made to secure a greater sum than is due, this would be a matter of proper observation to the jury on the question of the good faith of the transaction, but we cannot say that, as matter of law, it renders the mortgage void.

The instructions in respect to the rendition of the account were in accordance with the former decision in this cause, and we think were correct; nor do we think the verdict should be disturbed as against evidence, from anything now before us.

On the point of the instructions as to the trust, we think there must be                                              *A new trial.*