EDWIN B. MACY & another *vs.* CHINA MUTUAL INSURANCE COMPANY.

BERNARD COGAN *vs.* COMMERCIAL MUTUAL MARINE INSURANCE COMPANY.

Bristol.   Oct. 26, 27, 1882. — Sept. 7, 1883.   C. ALLEN, COLBURN & HOLMES, JJ., absent.

The constructive total loss of a whaling ship at a port where whaling outfits are bought and sold, and where the outfits are in safety, is not a constructive total loss of the outfits, although no vessel is obtainable, within a reasonable time, to carry forward the outfits on the voyage insured.

A whaling ship and her outfits, which were separately valued, were insured against loss by perils of the seas. The policy provided that catchings shipped home during the voyage should be at the risk of the insured, without diminution of the value of outfits at the time, and that one fourth of all other catchings should replace the outfits consumed. There was a constructive total loss of the ship at a whaling port, the unconsumed outfits were sold there, and the quarter catch was properly shipped to the home port of the vessel. *Held*, that the insured was entitled to recover of the insurer the expense of transshipping the quarter catch, but not the freight paid for carrying it to the home port nor the cost of insurance effected upon it.

ACTIONS OF CONTRACT on two policies of insurance, each for $2250, upon the barque Joseph Maxwell and whaling outfits, on each interest in proportion as valued, at and from New Bedford, January 16, 1872, wherever she may go on a whaling voyage, until her return to New Bedford, if on or before January 16, 1876. In the margin of each policy, the vessel was valued at $11,000, and the outfits at $25,000. The policy of the Commercial Insurance Company, which had its place of business in New Bedford, contained the following printed clause: "It is understood and agreed, that catchings shipped home during the voyage shall be at the risk of the insured, without diminution of the value of outfits at the time, and that one fourth of all other catchings shall replace the outfits consumed." The policy of the China Insurance Company was made at Boston, and was expressed to be "subject to the same risks, conditions, liabilities and restrictions as are taken by the New Bedford insurance companies on whaling risks."

These cases were before the court and were argued with the cases reported 131 Mass. 239; and, after the decision, were

referred to an auditor, on whose report the cases were heard by *Morton*, C. J., and reserved for the consideration of the full court. The facts stated in the auditor's report sufficiently appear in the opinion.

*T. M. Stetson & L. L. Holmes*, for the plaintiffs.

*J. C. Dodge & C. W. Clifford*, ( *G. Marston* with them,) for the defendants.

FIELD, J.   In these cases we have already decided that whaling outfits are a subject of insurance distinct from the ship, and are not covered by insurance on the ship; that an insurance on outfits is not an insurance on the voyage; that a total loss of the ship, whether actual or constructive, is not necessarily a constructive total loss of the outfits ; that evidence of a usage in New Bedford to treat the outfits as constructively totally lost when there is a total loss of the ship, is inadmissible, as contradicting the rules of law; and that "the outfits, having been separately insured, and having arrived in safety at Honolulu, a large whaling port at which whaling outfits can be bought and sold, cannot, consistently with the well-settled rules of law, be held to have been totally lost by the breaking up of the voyage and the loss of the ship." *Taber* v. *China Ins. Co.* 131 Mass. 239, 252.

The causes were recommitted to the auditor for the purpose, among other things, of ascertaining " the amount of the partial loss upon the outfits."

At the hearing before the auditor, on recommittal, the defendants admitted that the plaintiffs could show loss of outfits at the rate of $1765.83 for sixteen sixteenths, but the plaintiffs claimed greater loss in respect of outfits, and offered evidence on which the auditor found " that from and after the time the Joseph Maxwell reached Honolulu, December 1, 1874, no vessel was obtainable during the year, nor within any reasonable time, to carry forward the outfits on the voyage insured, or to act in coöperation with said outfits in pursuance of the voyage insured, and that there were no means open to said outfits of continuing said voyage or any part thereof."

The plaintiffs contend that these facts show a constructive total loss of outfits, because no ship was obtainable within a reasonable time for a whaling voyage on which these outfits could be put and used for the purpose of whaling, which was the

purpose for which they were designed. This argument seems to assume that the defendants, in respect to the perils covered by the policies, agreed with the plaintiffs that they should have the power of using these outfits on a whaling voyage, either on the Joseph Maxwell or on some other vessel, during the time limited in the policies, and hence it would follow that, if their power to do this were totally destroyed by any of the perils insured against, during the time limited in the policies, and before the return of the vessel to New Bedford, the insured should be indemnified therefor, on abandonment, as for a total loss of outfits. But such is not the contract.

Whaling outfits, although a distinct subject of insurance, are neither ship nor cargo, as these words are ordinarily used. The one fourth of all catchings not shipped home, which replaces the outfits consumed, resembles cargo. A part of the outfits themselves resembles the provisions, tackle, apparel and furniture of a commercial vessel. It is, to say the least, doubtful whether, if another vessel for whaling could have been obtained at Honolulu, these policies would have covered the outfits, if put on board this vessel and used on a whaling voyage. The insurance was upon the barque Joseph Maxwell and outfits, wherever she may go on a whaling voyage until she shall return to New Bedford, if she shall return within the time limited in the policies. The ultimate destination of the unconsumed outfits and of the quarter catch, as apparently contemplated by the parties, was New Bedford. So far as the plaintiffs have lost the use of the outfits on a future whaling voyage by the loss of the ship and by inability to obtain another for whaling purposes, the loss resembles the loss of the use of the ship on such a voyage, which is not an element of damage in adjusting the loss of the ship. So far as outfits resemble cargo, they were left by the loss of the ship at a port at which they could be sold, or from which they could be transshipped to New Bedford, the place of their ultimate destination. The new evidence practically adds nothing to the facts considered by the court in the previous opinion. The assumption in that opinion that the voyage was broken up implied that the whaling voyage could not be continued with these outfits, and that was either because no vessel for whaling purposes could be obtained, on which these outfits could be put and

used, or because a voyage in another vessel, if obtained, would not be a continuation of the voyage covered by these policies. The ground of that decision is, that although the voyage was broken up, yet, as the outfits had been left at a port at which they could properly be sold, or from which they could be transshipped to New Bedford, as they were not perishable and the owner had not lost possession or control of them, the cases, on the facts, were not within the decisions which hold that a total loss of the ship works a constructive total loss of the cargo, when the voyage is broken up and the cargo cannot be sent to its port of destination. If the outfits were sold at Honolulu, it was not a sale by necessity, for the benefit of whom it might concern; it was a sale by the owner or his agent, because it was a favorable market. It is undoubtedly implied in that opinion that, when a whaling voyage is broken up by the loss of the ship, the outfits for the purposes of insurance become cargo, and are held to be totally or partially lost, according to the principles which govern the adjustment of a loss of cargo under similar circumstances. The usage at New Bedford, which the court held inconsistent with the rules of law, gave full force to the fact that outfits are an active instrumentality in connection with the ship for prosecuting a whaling voyage, and therefore it was that by the usage a total loss of the ship carried with it, as an incident, a constructive total loss of outfits. But as this usage is not in accordance with the law, there seems to be no middle ground, and the loss must be adjusted, upon the unconsumed outfits and the quarter catch, taken together, as a partial loss of cargo would be, under the same circumstances.

The owner had a right to insist that the outfits and quarter catch should be sent to New Bedford at the risk of the insurers, if this could be done. If the owner voluntarily received them at Honolulu, and put an end to the risk there, the partial loss would be adjusted upon the same principles as at the port of destination. Apparently, the unconsumed outfits were sold by the owner at Honolulu, and the quarter catch was transshipped to New Bedford. It has been found by the auditor that "it was proper and necessary to bring the quarter catch to New Bedford in order to realize its value." Under this finding, it must be considered that the quarter catch was properly transshipped

to the port of destination, by a necessity occasioned by a peril insured against, and the extra expense of this transshipment must be borne by the insurers. The amounts claimed by the plaintiffs are, freight $1162, insurance $203, transshipment charge $102. The assured can claim that the extra expense of the transshipment of the quarter catch to New Bedford should be borne by the insurers only on the ground that its destination in the Joseph Maxwell was New Bedford. If he had voluntarily separated it from the Joseph Maxwell, and shipped it home by another vessel, it would by the terms of the policies no longer have been covered by them. Whether, if the barque had not been lost, the owner would have done this, is too conjectural to affect the rule of damages. In these cases, the separation actually was from necessity, and not by the will of the assured. If the barque had not been lost and the quarter catch had been brought home in the barque, it is found that the freight paid is no more than a reasonable allowance to the vessel for this service. This service the assured was bound to render, if there had been no loss of the ship, so long as the quarter catch remained covered by the policies. When the owner of the cargo is also the owner of the ship, a reasonable allowance for transportation must be regarded as in the nature of original freight. The freight paid in these cases was not therefore extra freight incurred by reason of a peril insured against. *Dodge* v. *Union Ins. Co.* 17 Mass. 470. *Allen* v. *Mackay*, 1 Sprague, 219. *Farnworth* v. *Hyde*, L. R. 2 C. P. 204. *Rosetto* v. *Gurney*, 11 C. B. 176.

If this quarter catch was transshipped by necessity, it was still covered by these policies, and additional insurance was unnecessary. *Macy* v. *Mutual Ins. Co.* 12 Gray, 497. *Pierce* v. *Columbian Ins. Co.* 14 Allen, 320. The transshipment charges were an extra expense.

To the $1765.83 agreed upon must be added the transshipment charges, $102, making in all $1867.83 as the whole partial loss on outfits and quarter catch, and each insurance company is liable for its proportion, less the premium due, with interest as agreed. If the parties do not agree upon the amount in each case, the details may be settled by a single justice, in accordance with the opinion.                        *Ordered accordingly.*