### In re McCOWN.

District Court, E. D. Pennsylvania. November 24, 1928.

No. 10419.

J. Howard Reber and Roberts & Montgomery, all of Philadelphia, Pa., for trustees.

Howard H. Yocum, of Philadelphia, Pa., for petitioner.

KIRKPATRICK, District Judge. Frank C. McCown, trading as McCown & Co., was a stockbroker and a member of the Philadelphia Stock Exchange. In the course of his business, he borrowed from J. S. Bache & Co., another member of the Stock Exchange, and as collateral for the loan pledged with Bache & Co. certain securities. For the purpose of this decision it is immaterial whether the securities were his own or those of his customers, and it may be assumed that, if they belonged to his customers, he had the right to pledge them. A petition in bankruptcy was filed against McCown February 28, 1927, and he was adjudged an involuntary bankrupt March 23, 1927. On these dates the securities were still in the hands of Bache & Co.

The rules of the Philadelphia Stock Exchange, to which McCown, Bache & Co. and the other members of the exchange had subscribed, provided (1) that certain proceedings might be taken upon the insolvency of any member; (2) that members holding securities deposited by such insolvent as margins upon his contracts might sell the same upon insolvency, and, after satisfying the claim of the creditor or creditors for whose benefit the margins had been deposited, were authorized to "pay over the remainder, if any, as directed by the governing committee * * *"; and (3) that upon insolvency of a member "all claims held by him against other members shall be handed over to the treasurer and by him held for the benefit of the insolvent's creditors." It may be assumed that the rules referred to are terms of a contract between McCown, Bache & Co. and the other members of the exchange, entered into more than four months prior to the bankruptcy, and it may further be assumed that the word "creditors," in the rule last quoted, means only such creditors as were members of the Stock Exchange.

The proper steps were duly taken, and Bache & Co. sold McCown's securities held by them. After paying McCown's debt to themselves, there remained in their hands a balance amounting to $11,879.43. McCown's trustees in bankruptcy demanded payment of this sum, and, upon refusal of Bache & Co. to pay, filed a petition for a rule to show cause why a turn-over order should not be made. Bache & Co. admitted all facts and submitted to the jurisdiction of the referee, denying the legal right of the trustees to claim the fund, and taking the position that, by reason of the rules of the exchange, the balance in their hands was payable to the treasurer of the exchange for distribution by him to members of the exchange who were creditors of McCown, notwithstanding the provisions of the Bankruptcy Act (11 USCA).

The Bankruptcy Act has no effect upon the validity of the original pledge of securities with Bache & Co., that having been made more than four months prior to the adjudication. Their right to sell the securities was lawfully exercised, and they were entitled to retain the amount of their own claim against McCown out of the proceeds. However, the sale produced money in excess of that. As to this money, in the absence of any further agreement, there would arise an obligation to return it to the debtor, and as to it a right or chose in action in favor of McCown came into being. This chose in action, which may be called McCown's equity in the securities, is the subject-matter of this proceeding.

Reduced to its elements, the question involved is whether McCown's pledge of securities with Bache & Co., in connection with his prior acceptance of the rules of the Stock Exchange, operated as an assignment to potential creditors in the exchange of his equity in such securities, and, if so, whether such assignment can

stand against general creditors, in view of the provisions of the Bankruptcy Act avoiding preferential transfers; or, if any limitation arising out of the law relating to assignments should seem to stand in the way of a decision upon the ultimate question involved, the pledge may be just as easily treated as an agreement of trust by which Bache & Co. agreed to hold the equity in trust for such creditors in the Stock Exchange as McCown might have at the date of his insolvency. The essential point is the validity of the transaction as against the Bankruptcy Act. Its validity and effectiveness in other respects may be assumed.

Now the rights of the Stock Exchange creditors were wholly contingent upon the insolvency of the pledgor. No matter how heavily McCown may have been indebted to other members of the Stock Exchange, if, prior to his suspension (or possibly his insolvency), he had paid his debt to Bache & Co., he would have been entitled to the return of his collateral. So it appears that, prior to his insolvency, McCown was in a position to resume absolute control and dominion over the thing assigned at any time, certainly upon payment of his debt to Bache & Co., and probably even after a default as to them, followed by a sale of the securities, provided he had not become insolvent. His rights in the equity, were such that the interests of the assignees (Stock Exchange creditors), whatever they may have amounted to, could have been wholly extinguished by him without working a conversion.

In Benedict v. Ratner, 268 U. S. 353, 45 S. Ct. 566, 69 L. Ed. 991, the Supreme Court had occasion to discuss the rights of assignees of choses in action as against creditors of the assignor, and the court there held that reservation of full dominion by the assignor conclusively imputes fraud. The court said: "But it is not true that the rule stated above and invoked by the receiver is either based upon or delimited by the doctrine of ostensible ownership. It rests, not upon seeming ownership because of possession retained, but upon a lack of ownership because of dominion reserved. It does not raise a presumption of fraud. It imputes fraud conclusively, because of the reservation of dominion inconsistent with the effective disposition of title and creation of a lien." In that case (which involved assignments of accounts receivable), until the assignee notified the assignor that he wished to enforce the assignment, the assignor had full dominion over the accounts, and could use the proceeds of such as were collected as he might see fit. In other words, he retained full dominion, subject to its being divested upon a contingency. The only difference between that case and the one at hand is that here the assignor's rights were subordinate to those of a prior pledgee, but, as soon as he extinguished the rights of that pledgee, he could retake the thing pledged, or the equity in it, and do with it as he saw fit in entire disregard of the subsequent assignees; or, to state it in another way, in this case, while the assignor did not have unfettered dominion and control to the same extent as in Benedict v. Ratner, there was no obligation of any kind to the assignees which stood in the way of his acquiring such dominion and control whenever he wished. It may be true that Benedict v. Ratner applied the law of the state of New York, but the statement of the rule referred to here formulated a principle of general law, applicable to all cases in the federal courts where the rights of general creditors in assigned accounts are involved. If, therefore, up to the actual date of his insolvency, McCown retained dominion and control over the equity and securities, even though contingent upon his satisfying the original pledgee, it follows that the acquisition of indefeasible rights by the Stock Exchange creditors, occurring as it did only upon insolvency, is a voidable preference under the Bankruptcy Act.

The question is really much narrower than that involved in many of the decisions discussed by the referee, and it seems unnecessary to consider those decisions. The referee said: "But, even if this could be regarded as an assignment, it was an assignment merely of what might be termed a contingent equity, to become effective only upon insolvency, when the Bankruptcy Law had begun to operate, and to fix the status of all classes of creditors." This practically summarizes what has been said in the foregoing opinion.

The order of the referee is affirmed.