### In re SAMUEL KADES, Inc.
### No. 8883.

District Court, M. D. Pennsylvania.
March 8, 1937.

Earl V. Compton, of Harrisburg, Pa., for petitioner.

Samuel Handler, of Harrisburg, Pa., for respondent.

JOHNSON, District Judge.

This is a petition to review an opinion and order of the referee in bankruptcy holding certain assignments of bailment leases by the bankrupt to American Acceptance Corporation, fraudulent in law because the bankrupt reserved and exercised unfettered dominion over the assigned leases.

Samuel Kades, Inc., conducted a retail furniture business consisting principally of sales of merchandise on installment contracts evidenced by bailment leases. At various times, Samuel Kades, Inc., purchased merchandise from the B. F. Huntley Furniture Company and from the Bigelow-Sanford Carpet Company. At the time of each purchase Samuel Kades, Inc., executed and delivered to the seller a promissory note in the amount of the purchase price, each payable to the bearer at the Pennsylvania Company for Insurances on Lives and Granting Annuities. Collateral, consisting of bailment leases signed by customers of Samuel Kades, Inc., was delivered with the notes. On the back of each was set forth the collateral delivered therewith. In accordance with a previous arrangement, the notes and collateral were in turn delivered by the seller to the American Acceptance Corporation for a valuable consideration, and Samuel Kades, Inc., made payment on the notes for the benefit of Acceptance Corporation.

The contracts made by the parties are set forth in twelve notes signed by Samuel Kades, Inc. The first six notes, being Exhibits 3 to 8, inclusive, executed at various times between October 11, 1933, and April 9, 1934, contain the same contractual provisions, the pertinent parts of which are as follows: "The undersigned hereby assigns to the holder hereof all right, title and interest in and to the * * * securities * * * set forth and described on the reverse side hereof as collateral security for the payment of this or any other liability or liabilities of the Undersigned, due or to become due. * * * The Undersigned hereby expressly agrees that so long as the holder hereof permits the securities to remain in his custody they shall be held separate and apart in trust exclusively for the holder hereof and that he will make no use or disposition thereof except as directed by the holder hereof in writing." The remaining six notes, being Exhibits 1 and 2

and 9 to 12, inclusive, executed at various times between April 25, 1934, and October 8, 1934, provide also that the undersigned assigns to the holder the securities set forth on the back of the note as collateral for the payment of that or any other liability of the undersigned, and provide further that: "The undersigned does also hereby agree that whenever in the opinion of the holder hereof this obligation is inadequately secured, that the undersigned will, upon request of the holder, assign, transfer and set over unto the holder such additional securities as the holder hereof may require. * * * The undersigned hereby expressly agrees that if the holder hereof permits the securities, or any monies collected thereon, or any part thereof, to remain in the custody of the undersigned they shall be held separate and apart in trust exclusively for the holder hereof and that he will make no use or disposition thereof except as directed by the holder thereof in writing."

Samuel Kades, Inc., paid all of the monthly installments required to be paid by the notes until an involuntary petition in bankruptcy was filed against it on November 5, 1934, at which time there remained due $5,834.31. Subsequently, the trustee in bankruptcy of Samuel Kades, Inc., petitioned to have the collateral assignments of the bailment leases set aside and turned over to him because the assignments were fraudulent. After taking testimony, the referee concluded that the real agreements between Samuel Kades, Inc., and American Acceptance Corporation, as evidenced not only by the notes, but also by the conduct of the parties, were such that unfettered dominion over the assigned leases was retained by Samuel Kades, Inc., thereby rendering the assignments fraudulent under the rule enunciated in Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991. The referee thereupon ordered the trustee to retain all collections made by him on the assigned accounts, ordered the American Acceptance Corporation to surrender to the trustee the assigned bailment leases, and allowed the American Acceptance Corporation's claim of $5,834.31 as a common claim. The American Acceptance Corporation filed a petition to review this order.

■ The petitioner contends that the case of Benedict v. Ratner, supra, does not apply to a case arising in Pennsylvania because it was decided upon the law of New York and does not set forth a general rule of law. While the case of Benedict v. Ratner rested primarily upon the law of New York, it has been followed in the federal courts in other states and in Pennsylvania. In re Lambert & Braceland Co., 29 F.(2d) 758 (D.C.E.D.Pa.); In re McCown, 31 F.(2d) 334 (D.C.E.D.Pa.) affirmed Middleton v. Fidelity-Philadelphia Trust Co. (C.C.A.) 35 F.(2d) 851. In the latter case, Judge Kirkpatrick said at page 336 of 31 F.(2d): "It may be true that Benedict v. Ratner applied the law of the state of New York, but the statement of the rule referred to here formulated a principle of general law, applicable to all cases in the federal courts where the rights of general creditors in assigned accounts are involved." See, also, Hughes Federal Practice, vol. 6, § 3751. The referee was right in holding that the doctrine of Benedict v. Ratner was a general principle of law applicable in Pennsylvania.

■ The petitioner further contends that unfettered dominion over the assigned accounts was not reserved to Samuel Kades, Inc., by the written agreements. By the first six written agreements, Exhibits 3 to 8, inclusive, the only things required of Samuel Kades, Inc., were to hold the securities or bailment leases in trust for the petitioner if the latter permitted any such securities to remain in its possession, and to pay the notes in twelve equal installments. Samuel Kades, Inc., was to collect the installments due on the leases; it was not required to apply any of these collections towards payment of the notes or to hold them in trust for any purpose, but could use them as it saw fit; it could not be required to furnish additional security for repossessed or closed accounts. The assignments of the leases as collateral security for the first six notes, Exhibits 3 to 8, inclusive, were fraudulent and void within the rule of Benedict v. Ratner because the assignor reserved dominion inconsistent with the effective disposition of title. There was, however, no such reservation of dominion by the remaining six notes, Exhibits 1 and 2 and 9 to 12, inclusive. These written contracts required Samuel Kades, Inc., to hold separate and apart in trust for the holder, any moneys collected on the assigned accounts or bailment leases and to make no use or disposition thereof except

as directed by the holder. The holder could require additional security if it saw fit. Samuel Kades, Inc., was therefore not permitted by the written contracts to deal with these assigned accounts as their own and accordingly these written assignments are not void under the rule of Benedict v. Ratner.

The petitioner finally contends that the referee made no finding and there is no evidence to support a finding that it had any notice or knowledge of any departure from the written contracts, and that consequently the written contracts were not modified by any conduct of Samuel Kades, Inc. Notwithstanding a written agreement to the contrary, if the assignee permits the assignor to exercise dominion over assigned accounts or acquiesces in the same, that is equivalent to an agreement reserving such dominion. See Lee v. State Bank & Trust Co. (C.C.A.) 38 F.(2d) 45; Id. (C.C.A.) 54 F.(2d) 518, 85 A.L.R. 216; In re Edelstein et al. (D. C.) 18 F.(2d) 963; Blue v. Herkimer National Bank (C.C.A.) 30 F.(2d) 256. The testimony and the findings of the referee clearly show that notwithstanding the written agreements, Samuel Kades, Inc.,' in fact exercised dominion over the assigned accounts. There is, however, no finding by the referee, and there is no testimony here to show that the assignee knew or had reasonable cause to believe that Samuel Kades, Inc., was departing in any manner from the written agreements. The only information which the petitioner had of the conduct of Samuel Kades, Inc., was that disclosed in the monthly reports which it required Samuel Kades, Inc., to make. The reports on the last six notes, Exhibits 1 and 2 and 9 to 12, inclusive, disclosed the amount of collections and the condition of the securities. The report of August 23, 1934, on one of these notes indicated that there was one repossession on an account in the amount of $120.80. On another note the report of October 25, 1934, only a few days before the bankruptcy, showed that there was one repossession on an account in the amount of $292.40. The report on two of the other notes showed that there were no repossessions. There were no reports made on the last two notes since they were executed only about a month before bankruptcy and no payments thereon were due. In view of the facts that the six notes in the amount of $5,637.34 were adequately secured by $11,407.60 in accounts; that there were only two repossessions in accounts of the value of $120.-80 and $292.40, the latter of which was reported only several days before the bankruptcy; that the reports did not indicate that the repossessed furniture was not being held in trust; that there was no default in payments on the notes; that there was no need for requiring additional security; and that the reports did not indicate any departure from the written contracts—the petitioners cannot be held to have acquiesced in or agreed to any departure from the written contracts made by Samuel Kades, Inc. The petitioner testified without contradiction that it did not know of any departure. The only fact which might have put it on notice was that the checks given by Samuel Kades, Inc., in payment for the notes, were not numbered consecutively, indicating that they were not drawn on a special or trust account. But the testimony on this point is not positive and the checks were not introduced in evidence. The trustee failed to meet the burden of proof on this point. See Lee v. State Bank & Trust Co. (C.C.A.) 38 F.(2d) 45, 48.

Since the petitioners had no knowledge of any departure from the written agreements and there was nothing to put them on notice of any departure therefrom, the petitioners did not acquiesce in or permit any departure from the written contracts, exhibits 1 and 2 and 9 to 12, inclusive. Consequently, these written contracts were not modified by any conduct of Samuel Kades, Inc., alone.