## In re LAMBERT & BRACELAND CO.

District Court, E. D. Pennsylvania.
December 10, 1928.

No. 10886.

Wolf, Block, Schorr & Solis-Cohen, of Philadelphia, Pa., for claimant.

Frank A. Chalmers, of Philadelphia, Pa., opposed.

KIRKPATRICK, District Judge. The question here is as to the right of a creditor holding an assignment of accounts receivable under an assignment which provides for the substitution of other accounts, executed more than four months before the bankruptcy, to hold against the trustee in bankruptcy the proceeds of accounts substituted by the assignor a few days before the bankruptcy.

The facts are as follows: More than four months prior to the filing of the petition, Salomon, the claimant, advanced $5,000 to the subsequently bankrupt corporation and took as collateral security an assignment in writing of certain accounts receivable (identified in an annexed schedule), unqualified except for the provision "with the privilege to the company to substitute other accounts of equal amount and validity for the accounts listed in the said schedule." The assignment was made about the first of the month. Thereafter the working out of the substitution feature was that the company during each month would collect the accounts (or as many of them as possible) assigned on

the first of the current month, deposit the money so obtained in the company's general balance without any earmarking, and use it for general business purposes. Then, at the beginning of the next month the company would send to the claimant a new schedule containing a list of accounts of approximately the same total value as those in the original schedule, including some of those already assigned but mainly arising from sales made during the month following the last prior assignment. The final substitution was made one day before the filing of the petition, and was like all the others, except that, along with the schedule, a new written assignment was sent to the claimant, the terms of which do not affect the point involved here. None of the debtors whose accounts were originally assigned or later substituted were at any time notified of the assignment. No entries were made upon the company's books setting aside the accounts assigned, except at the time of the last substitution. During the time in question the company usually had a balance in the bank of not less than $1,000.

It is clear that, as the agreement actually operated, the substitution of new collateral was rarely if ever simultaneous with the withdrawal of the old. An account assigned on the first of the month might be collected by the assignor at any time during the month. When collected, it ceased to exist, and of course was withdrawn from the lien created by the assignment. The lender got nothing to take its place until the beginning of the following month. This was really the only practical way to work out the arrangement. The accounts were mostly small, and it would have been almost out of the question to have sent the lender notice of substitution of an account of equal value each time that a small bill was paid to the company. The referee found as a fact that the practical operation of the substitution feature, as above described, was with the knowledge and consent of the assignee, and that finding is supported by the evidence.

Now the original assignment either did or did not contemplate the method of substitution actually adopted in the operation of the agreement; that is, the collection and free use by the assignor for his general purposes of the accounts assigned, followed by the assignment of new accounts at the end of the month. A great deal of testimony was taken with a view to showing the original understanding of the parties upon this point. The relevancy of this testimony is challenged, but that question need not be considered, since

the result will be the same whether we accept it or reject it. If the parties at the time of the first assignment understood and agreed that the arrangement would be carried out in the way in which it was, then the whole transaction was void under the rule laid down in Benedict v. Ratner, 268 U. S. 353, 45 S. Ct. 566, 69 L. Ed. 991, because the assignor reserved dominion over the accounts assigned inconsistent with the effective disposition of title and the creating of a lien. If, on the other hand, the original agreement required the substitutions to be simultaneous with the collection of accounts, or if (what is equivalent thereto) it required the assignor to hold the moneys collected separate and intact for the assignee's benefit until new accounts were assigned to take the place of the old, then such agreement was clearly modified and changed by actual practice known and assented to by the assignee, and in that case all substitutions within four months prior to the bankruptcy, and particularly the final assignment or so-called substitution, would be void as preferences. In other words, it would not be a substitution at all but an entirely new delivery of collateral to a creditor whose security had ceased to exist. The law upon this point is clear. While a creditor holding collateral may, without losing his secured status, permit an indefinite number of substitutions of collateral of equal value not diminishing the debtor's estate, "the two transactions—the withdrawal of the old security and the substitution of the new—must be contemporaneous; at any rate the withdrawal must not take place before the delivery of the substituted security. * * * Where new accounts are substituted for old accounts, withdrawn at the time, of course no preference results; but where old accounts held as security have been collected, new accounts thereafter delivered within the four months' period to replace those sold, will be preferences, if the other elements of preference also exist." Remington on Bankruptcy, §§ 1708 and 1779.

I realize that the conclusion arrived at will throw great practical difficulties in the way of the use of assignments of accounts receivable as security for loans, but, while such practice need not generally be condemned, nevertheless it involves the imposing of secret liens upon an important part of the debtor's property. It may be allowed strictly within the limits set by Benedict v. Ratner, supra, but certainly the policy of the law is against its extension.

The order of the referee is affirmed.