Merrimack,
Jan. 3, 1950. } No. 3872.

GEORGE A. COLBATH *& a v.* MECHANICKS NATIONAL BANK.

112

*Maurice A. Broderick* (by brief and orally), for the plaintiff.

*Orr & Reno* and *Eugene C. Struckhoff* (Mr. *Struckhoff* orally), for the defendants.

BLANDIN, J.  The plaintiff, while admitting a valid factors lien was created by the agreement by the borrower with the bank, claims it was later invalidated because, first, the borrower was permitted by the defendant bank to use the proceeds of sales in the ordinary course of business without accounting to the defendant; second, there was no consignment or pledge monthly or otherwise to the defendant as required by the act; third, there was no monthly inventory delivered to the bank as required by the agreement and the plaintiff argues that this indicates the parties did not intend after acquired goods to be subject to the lien.  Finally the plaintiff insists that the defendant lost its lien by failing to comply with certain provisions of our laws relating to bulky article attachments (R. L., *c.* 388, *ss.* 23, 25-28), and by neglecting to give notice of the sale as required by R. L., *c.* 262, *s.* 43 and R. L., *c.* 264, *s.* 5.  With reference to the plaintiff's last claim it seems sufficient to say that the statutes he cites do not appear applicable here.  The Factors Lien Act with which we are dealing is a new creation and neither by expression nor by reasonable implication does it seem that R. L., *c.* 262, *s.* 43 the so-called Sales in Bulk Act applies.  57 A. L. R. 1049; *Wasserman* v. *McDonnell,* 190 Mass. 326; *Atamian* v. *O'Leary,* 278 N. Y. S. 218.  Nor are the remaining statutes cited under the plaintiff's last contention authority in his favor.  No demand for an account or tender of any amount due the bank was made by the plaintiff.  The burden was not on the defendant to seek out and give notice to all possible subsequent attaching creditors but rather on the plaintiff to demand an account.  This he did not do and the defendant having complied with all other provisions and given all the notice required under the law maintains its lien against subsequent attaching creditors.  R. L., *c.* 262-A, *s.* 3.  See also, *In re Comet Textile Co.,* 15 F. Supp. 963, aff. 91 F. 2d 1008 (2d Cir. 1937) a case decided under the New York Personal Property Law (Consol. Laws of N. Y., *c.* 41, *s.* 45) which is similar to ours.

Regarding the requirement of a monthly inventory which the borrower was to make to the bank as set forth in the agreement, this seems a mere administrative provision for the benefit of the defendant of which the plaintiff may take no advantage. We do not believe the defendant's failure to require or receive this inventory shows that the parties did not intend future goods to be subject to the lien for there are numerous indications to the contrary. First, we have the fact that the agreement provided that the borrower should keep an inventory at 135% of the outstanding indebtedness. Second, the recorded notice expressly stated that items " . . . subject to the lien are or *subsequently will be held* . . . in or about their factory." (Emphasis ours). Finally the agreement provided for "a continuing general lien on all such items . . . at said premises." These explicit provisions plainly indicate the intent of the parties that after acquired goods should be subject to the lien. It seems improbable that our Legislature intended that a general store borrower, for example, must separately consign each spool of thread, can of beans or package of gum to a lender bank in order to maintain the lien. Our act in following the original New York law (N. Y. Laws 1911, *c.* 326) as amended by N. Y. Laws 1931 *c.* 766, where the words "continuing general lien" were added and N. Y. Laws 1935, *c.* 690, also contains the significant words "continuing general lien." Construing the meaning of these words in *In re Comet Textile Co.*, 15 F. Supp. 963 (aff. 91 Fed. 2d. 1008) the court spoke as follows:—"The third argument is that under the act there must be, first, an agreement providing for a lien, and, second, a delivery or act indicating change of possession. It is said that here there was only the agreement providing for a lien. The contention is built on a labored effort to carry over into the statute an element of common-law pledges. Under the statute transfer of possession to the lienor is unnecessary." *p.* 965. We believe in following this case we reach the logical and reasonable result intended by our Legislature. It therefore appears that this contention of the plaintiff fails.

The disposal of the above issues brings us to the plaintiff's final claim that the defendant lost its lien by allowing the borrower to sell goods in the usual course, the proceeds of which exceeded the amount of the loans and to use these proceeds at pleasure without accounting to the bank. The answer to this seems to be that there is no provision in chapter 262-A requiring the borrower to account. Furthermore section 7 of the act demands that it be "construed liberally." It therefore seems that the failure to account did not invalidate the lien.

In connection with this it also seems that the plaintiff's contention that the defendant must exhaust its remedies against the proceeds of the sales cannot be maintained. The reason is that the plaintiff has not shown that the defendant has obtained a lien on the proceeds in accordance with paragraph 4 of the agreement.

It follows that the defendant's lien on the goods prevails except as to certain articles admittedly not covered by it as set forth in *par.* 6 of the agreed statement of facts.

This seems to dispose of all exceptions briefed or argued and the order is

*Case discharged.*

DUNCAN, J., dissented: LAMPRON, J., was absent: the others concurred.

DUNCAN, J., *dissenting:* It is not disputed that the agreement between the borrowers and the defendant bank established a valid factor's lien. The dispute relates to whether particular merchandise attached by the plaintiff was subject to the lien. The agreed statement contains no stipulation that this property was located at the borrowers' place of business when the lien was created, and since the attachment was made more than a year later, it is a fair inference that it was not. The statute (R. L., c. 262A, s. 1) provides that "if so provided by any written agreement, all factors shall have a general continuing lien upon all merchandise from time to time consigned to or pledged with them, whether in their . . . possession or not . . . " The agreement which created a lien in favor of the defendant provided that the "Borrowers shall make and deliver to the Bank an actual inventory of the contents of their factory once each month," showing "actual cost . . . of each item . . . " This may well be thought to be "substantial compliance" with the provisions of section 1 with respect to the requisites of a written agreement sufficient to create a lien (s. 7).

Other proof which in my view is essential to the establishment of a lien is lacking. Nowhere does it appear that the attached goods were either subject to the lien originally created, or if after-acquired, that they became subject to it as "merchandise from time to time consigned to or pledged with" the bank (*supra*, s. 1). So far as appears, no monthly inventory was ever made or delivered. I recognize that a transfer of possession of the goods is not required. Cf. *In re Comet*

*Textile Co.*, 15 F. Supp. 963. The statute so provides (*s*. 1). It further provides for a "continuing general lien." The lien may continue as to the proceeds of sale of the goods by the borrower, or as to goods substituted therefor. But before such a lien can continue, it must first attach; and the statute contemplates that before it shall attach, the particular goods shall be "consigned . . . or pledged." This can be done either by the original contract, or by subsequent appropriation of the goods to it. Until it is done, the lien fails of creation by reason of non-compliance with the statute. See Gilmore, "Chattel Security: II," 57 Yale L. J. 761, 771, 772; Silverman, "Factoring: Its Legal Aspects and Economic Justification, 13 Law & Contem. Prob. 593, 601, 604.

While the statutes of some other jurisdictions contain more explicit provisions with respect to the appropriation of after acquired goods to a lien contract (See Minn. Laws 1947, *c*. 590, *s*. 2; Purdon, Penna., Ann. Stats. Tit. 6, *s*. 222), the provision of our statute that the lien shall be upon merchandise "from time to time consigned . . . or pledged" should not be disregarded and is reasonably plain. The Legislature cannot well be said not to have intended what it expressly required. Since the merchandise in question was not shown to have been made subject to the lien at any time, the defendant has failed to establish the existence of a valid lien upon it.