**MANCHESTER NAT. BANK v. ROCHE,**
**Trustee.**

No. 4536.

United States Court of Appeals
First Circuit.

Feb. 1, 1951.

Perkins Bass, Manchester, N. H. (William L. Phinney, Manchester, N. H., on the brief), for appellant.

Charles J. Flynn, Nashua, N. H. (Robert E. Earley, Nashua, N. H., on the brief), for appellee.

Before MAGRUDER, Chief Judge, WOODBURY, Circuit Judge, and FORD, District Judge.

**MAGRUDER, Chief Judge.**

This is an appeal from an order of the United States District Court for the District of New Hampshire, affirming an order of a referee in bankruptcy which denied a petition by Manchester National Bank that the trustee for the bankrupt estate of Standard Construction Company, Inc., be directed to turn over to the said petitioner certain accounts receivable of the bankrupt corporation.

On May 14, 1947, Manchester National Bank and Standard Construction Company entered into a factor's lien agreement covering the company's inventory and accounts receivable, under the provisions of C. 262–A, Rev.Laws of New Hampshire, as enacted in N.H.Laws 1943, C. 161, and amended by N.H.Laws 1949, C. 156. The text of a portion of § 1 of C. 262–A and of § 5 in full will be found in the footnote.[1]

---

1. "1. Factors Liens. If so provided by any written agreement, all factors shall have a continuing general lien upon all merchandise from time to time consigned to or pledged with them, whether in their constructive, actual or exclusive occupancy or possession or not, and upon any accounts receivable or other proceeds resulting from the sale or other disposition of such merchandise, for all their loans and advances to or for the account of the person creating the lien (hereinafter called the borrower), together with interest thereon, and also for any commission, charges, and expenses properly chargeable against or due from said borrower and for the amount due upon any notes or other obligations given to or received by them for or on account of any such loans or advances, interest, commission, charges, and expenses, and such lien shall be valid from the time of filing the notice hereinafter referred to, and whether such merchandise shall be in existence at the time of the agreement creating the lien or at the time of filing such notice or shall come into existence subsequently thereto or shall subsequently thereto be acquired by the borrower; provided, that a notice of the lien is recorded, as hereinafter provided, stating [certain details of the transaction which need not now be set forth]."

"5. Lien on Bills Receivable. If any agreement provides for a right to or lien upon accounts receivable or other pro-

ceeds arising out of the performance of work, labor or services or resulting from or which may result from a sale or sales of merchandise, whether or not such merchandise or a part thereof is subject to the lien, such right or lien upon such accounts receivable or the proceeds shall not be void or ineffectual as against creditors or otherwise by reason of failure to make or deliver a further assignment of any such account; provided, a bill, invoice, statement or notice shall be mailed, sent or delivered to the person owing such account receivable stating in substance that the account is payable to the factor, and such mailing, sending or delivery of such bill, invoice, statement or notice shall have the same effect as a formal assignment of such account to the factor named therein; provided, however, that the making and delivery of any such further or formal assignment shall, in and of itself, give to the factor a right to or lien upon the account receivable assigned and to the proceeds thereof, effectual as against all claims of creditors of the assignor, irrespective of whether or not such bill, invoice, statement or notice shall be mailed, sent or delivered to the person owing such account receivable stating in substance that the account is payable to the factor. If merchandise sold, or any part thereof, is returned to or recovered by the assignor from the person owing the account receivable and is thereafter dealt

On the same day the statutory prerequisites for the validation of the lien on inventory were fulfilled by the posting of notice and the recording prescribed in §§ 1 and 2 of the Act;[2] and shortly thereafter a notice was pasted in the front of the accounts receivable ledger of the company stating that such accounts were assigned to Manchester National Bank. However, the referee found, and the finding is undisputed, that prior to November 1, 1948, no notice of assignment was given to any debtor in such accounts receivable. On or about November 1, 1948, the bank did instruct Standard Construction Company to stamp its invoices and statements with notice of the assignment.

The company filed a voluntary petition in bankruptcy on January 25, 1949, and was later duly adjudged a bankrupt. In denying the bank's petition for a turnover of the accounts receivable, the referee held (1) that the bank had failed to perfect a valid lien on such accounts prior to four months before the filing of the petition in bankruptcy, and that the belated notification of the assignment, given to debtors within the four-month period, was an attempted preference under § 60 of the Bankruptcy Act, 11 U.S.C.A. § 96; and (2) that the reten-

tion by the bankrupt of dominion over the accounts receivable and the proceeds thereof made the assignment voidable as a fraud on creditors within the doctrine of Benedict v. Ratner, 1925, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991. The district court rested its affirmance of the referee's order on the first ground taken by the referee, and did not consider the alternative.

In determining whether the lien on the bankrupt's accounts receivable had become perfected more than four months prior to January 25, 1949, we must of course look to the New Hampshire law, Benedict v. Ratner, supra; In re Robert Jenkins Corp., 1 Cir., 1927, 17 F.2d 555, and in particular to the somewhat obscure provisions of § 5 of C. 262–A, quoted above in the footnote. It is stated in appellant's brief that the "sole question presented by this appeal is whether the statutory requirements of section 5 of the New Hampshire Factors Lien Act were met prior to the four month period as to certain of the bankrupt's accounts receivable. If the answer is in the affirmative, the factors lien thereon was perfected before the four month period and there was no preference under section 60, sub. a, of the Bankruptcy Act".[3]

with by him as his own property, or if the assignor grants credits, allowances or adjustments to the person owing an account receivable, the right to or lien of the factor upon any balance remaining owing on such account receivable and his right to or lien upon any other account receivable assigned to him shall not be invalidated, irrespective of whether the factor shall have consented to the acts of the assignor."

2. The requirement in § 1 that notice of the lien be posted at the premises was deleted in N.H.Laws 1949, c. 156.

3. Appellant does not advance the contention that any of the accounts here in question resulted from the sale of merchandise on which the bank had a lien, and that under the provisions of § 1 of C. 262–A the lien, not only upon such merchandise but also upon any accounts receivable resulting from the sale thereof, became valid from the time of the filing of the notice therein referred to, "whether such merchandise shall be in existence at the time of the agreement creating the lien or at the time of filing such notice or shall come into existence

subsequently thereto or shall subsequently thereto be acquired by the borrower".

There would be two objections to such a contention. In the first place, though the statute is hardly a model of the draftsman's art, it would seem, from a reading of § 1 in conjunction with § 5, that the only lien which may be perfected under § 1 by the filing of the notice is a lien upon merchandise or stock in trade (conceived of as a "floating mass", see *infra* this opinion). Section 5 is the section which deals comprehensively with the creation of liens on accounts receivable, and it seems that, to be a valid lien on accounts receivable, even on accounts receivable resulting from the sale of merchandise, the lien must be perfected in one of the two alternative methods described in § 5 "whether or not such merchandise or a part thereof is subject to the lien". In the second place, even if the above-suggested contention were well taken, the burden would be upon the petitioner for a turn-over order to show which of the accounts receivable in question were in fact the result of the sale of merchandise upon which the factor had a lien; and this the bank made

In substance § 5 provides two alternative methods for effectuating the factor's lien agreement with regard to accounts receivable: (1) By the giving of notice of the assignment to the account debtor, or (2) by making and delivering a "further or formal assignment" of the account. Since it is a fact that prior to November 1, 1948 no such notice of assignment was sent to the account debtors, it must follow that the lien was not perfected more than four months before bankruptcy unless the second statutory alternative was complied with, that is, unless Standard Construction Company made a "further or formal assignment" to the bank of the accounts now in question. Subsequent to the execution of the factor's lien agreement on May 14, 1947, no instrument in the nature of an assignment of the accounts was ever executed by the bankrupt. But appellant contends that such "further or formal assignment" within the meaning of § 5 of the Act may be found in the terms of clause (3) of the factor's lien agreement itself. The said clause (3) provided as follows: "The Borrower agrees to accept the advances made or to be made, on the said line of credit in accordance with the terms hereof, and agrees to sell, assign, transfer and pledge, and does hereby sell, assign, transfer and pledge to the Bank all of the merchandise, inventory and accounts receivable owned by it (described in Schedule A attached hereto), and also agrees to, and does hereby, sell, assign, transfer and pledge to the Bank any and all merchandise, inventory and accounts receivable of any kind, nature and description whatsoever that subsequently may be acquired by the Borrower, and whether or not resulting from the sale or other disposition of any of said merchandise, inventory and accounts receivable."

This clause does by its terms purport to be an agreement to assign and a general assignment *in praesenti* of all existing and future accounts receivable; and it is contended that, as each account materialized in the future course of business, appellant's lien automatically attached thereto.

The bank's contention in this regard has apparently not been discussed in any New Hampshire cases, and the statute itself gives no specific answer. Nor has there been, so far as we can find, any authoritative interpretation of the phrase "further or formal assignment", found also in § 45 of the N.Y. Personal Property Law, McK.Consol.Laws, c. 41, from which C. 262-A, Rev.Laws of N.H., was apparently derived almost verbatim. In Bloch v. Mill Factors Corp., 2 Cir., 1941, 119 F.2d 536, 538, 134 A.L.R. 1188, it is said: "Section 45 [of N.Y. Personal Property Law] provides two alternative methods by which a merchant can give to a factor a lien upon his accounts receivable: first, by a general agreement that the factor shall have such a lien, which must be implemented by notice to each of the merchant's customers that the account is payable to the factor; and, second, by a separate assignment of each account to the factor of which he need not advise the customer. The defendant followed both methods and the trustee does not question the validity of the assignments, so far as concerns the accounts themselves."

While the above-quoted language was by way of dictum, since in the Bloch case the corporation had executed a separate assignment of each account as it came into

---

no effort to show, in the hearing before the referee, so far as the record discloses. Indeed, the bank failed to show that any of the particular accounts receivable came into existence more than four months before the filing of the petition in bankruptcy. On the bank's theory of the case, as appears below, by virtue of the language in the factor's lien agreement purporting to be a general assignment of all present and future accounts receivable, a lien upon each future account receivable was automatically perfected at the moment it was acquired by

the bankrupt. But on this theory, if the accounts receivable which the bank was seeking to have the trustee turn over came into existence within the four-month period, the creation of a lien thereon, also necessarily within the four-month period, would clearly be a preference. As to whether it would be a voidable preference under § 60, sub. b, of the Bankruptcy Act, the bank makes no claim that during the four-month period it was lacking in "reasonable cause to believe" that Standard Construction Co., Inc., was insolvent.

existence, it does lend some support to the conclusion we have reached that a purported general assignment of future accounts, contained in the factor's lien agreement itself, is insufficient to perfect a lien on such accounts under § 5 of C. 262–A. The interpretation thus made in the Bloch case seems to have met with approval in 4 Collier, Bankruptcy ¶ 70.83 n. 12 (14th ed. 1942).

■ We do not decide that a clause in the factor's lien agreement itself can never be an effective assignment of accounts in existence when the agreement was executed, though the statutory reference to a "further" assignment might raise some doubt on this point. What we do hold is that to perfect the lien on future accounts, the after-acquired accounts must be assigned as or after they come into existence; that the statute does not contemplate a general assignment of future accounts.

Several considerations lead us to this conclusion.

First, the language of § 5 seems most naturally to refer to assignments of existing, ascertained accounts. Indeed the word "assignment" normally imports a present transfer by the assignor; and the assignor cannot presently transfer an interest which he has not yet acquired, though he may contract to assign such an interest in the future upon his acquisition of it.

Second, it is not without significance that in § 1 of C. 262–A the New Hampshire legislature specifically provided that the lien on merchandise would be valid from the time of filing the prescribed notice "whether such merchandise shall be in existence at the time of the agreement creating the lien or at the time of filing such notice or shall come into existence subsequently thereto or shall subsequently thereto be acquired by the borrower". In other words, the res which is the subject of the lien provided in § 1 is the merchandise or stock in trade, conceived of as a unit presently and continuously in existence — a "floating mass", the component elements of which may be constantly changing without affecting the identity of the res. Cf. Hopkins v. Baker Bros. & Co., 1894, 78 Md. 363, 28 A. 284, 22 L.R.A. 477; Pullman's Palace Car Co. v. Pennsylvania, 1891, 141 U.S. 18, 26, 11 S.Ct. 876, 35 L.Ed. 613. So conceived, it is not inconsistent with the existence of the lien or floating charge on the inventory, as it may be made up at any particular time, that the borrower is free to withdraw an item from stock for sale in the regular course of business, without any obligation to account to the lienholder for the proceeds. Colbath v. Mechanicks National Bank of Concord, 1950, 96 N.H. 110, 70 A.2d 608. By analogy it might be possible to treat a merchant's accounts receivable as a unit presently and continuously in existence, the component elements of which (the particular accounts) may be constantly changing, without affecting the identity of the res; so that a general assignment by way of security of accounts receivable present and future might be deemed to create in praesenti a lien upon this enduring unit, the accounts receivable, which lien would persist as a floating charge upon such res, however much its component elements might change from time to time by the payment of old accounts and the creation of new ones. But when the legislative explicitness in § 1 of C. 262–A is contrasted with the language of § 5, it would be quite far-fetched to read into § 5 any such sophisticated concept as suggested above.

■ Third, and perhaps most persuasive, is the definition of account receivable given in C. 263–A of N.H.Rev.Laws, enacted in N.H.Laws 1945, C. 19. Chapter 263–A, which has been commonly called a "validation statute", see Koessler, New Legislation Affecting Non-Notification Financing of Accounts Receivable, 44 Mich.L.Rev. 563, 594–600 (1946), is captioned "Assignments of Accounts Receivable", and is partly concerned, as is C. 262–A, with the validity of assignments of accounts receivable as against creditors of the assignor. The two chapters are obviously in pari materia and should be read together. Chapter 263–A provides in substance that after

an assignee of an account receives a written assignment in good faith and for value, whether or not notice of the assignment has been given to the account debtor, "no existing or future creditor of the assignor and no subsequent assignee shall or can acquire any right, title, lien or interest in or to such account, or any proceeds thereof * * * equal or superior to or in diminution of the rights of the assignee under such assignment." In the definitions in § 1 of C. 263–A it is provided: " 'Account' means an account receivable. It includes sums owing, although not yet payable, under an existing contract, but not sums to become due for goods not yet completed or services not yet rendered." Since the legislature evidently does not contemplate under C. 263–A that a lien upon an account receivable may be perfected unless there has been an assignment thereof after the account has come into existence, it seems to us that § 5 of C. 262–A, even if deemed to be somewhat ambiguous, should be given an interpretation in harmony with the provisions of C. 263–A.

For these reasons we conclude that language in a factor's lien agreement, under § 5 of C. 262–A, purporting to be a present assignment of future accounts receivable is not effective automatically, and without more, to create a valid lien on such accounts as they come into existence in the future.

It is true, as appellant points out, that since under § 5 no notice need be given either to the customers whose accounts are assigned or to the creditors of the assignor, it is perhaps of little practical importance whether the "assignment" includes future or only existing accounts. However, the legislature has drawn such a. distinction in § 263–A, and we believe that such a distinction is also implicit in the natural reading of § 5 of C. 262–A. Under this interpretation, the general language of assignment in clause (3) of the factor's lien agreement might well have been effective as to any accounts which were in existence on May 14, 1947, when the agreement was executed, but appellant apparently does not claim that any of the accounts here in dispute were in existence at that time.

We think, also, that the order under review may properly be affirmed on the alternative ground taken by the referee, namely, that retention by the borrower, with the bank's assent, of complete dominion over the assigned accounts and their proceeds, rendered the assignment void as a fraud on creditors under the doctrine of Benedict v. Ratner, 268 U.S. 353, 45 S. Ct. 566, 69 L.Ed. 991. The factor's lien agreement provided, in paragraph (11): "If and to the extent required by the Bank, the Borrower shall deposit or permit to be deposited in a special cash collateral account * * * such of the proceeds of the collateral as the Bank shall not require to be applied on the indebtedness and withdrawals from any such special cash collateral account shall be made by the Borrower only upon such terms and conditions, and under such supervision as the Bank may from time to time prescribe." [The term "collateral" as here used in the phrase "proceeds of the collateral" is earlier defined in the agreement as including accounts receivable which are made subject to the lien.] The referee found that "there appears no evidence that the petitioner herein, prior to November 1, 1948, required the bankrupt corporation to account for the Accounts Receivable, or further, require[d] it to turn such proceeds over to the petitioner for credit on the indebtedness which they secured. It therefore follows that the bankrupt corporation retained dominion and control over the Accounts Receivable with the right to use the proceeds collected by it for its own purpose." In fact the assistant cashier of the bank testified that as a matter of banking procedure under a factor's lien agreement "we do not ask for the actual payment of receivables as they are received by the corporation unless we want the loan reduced"; that the bank works on a percentage basis, and as long as "the ledgers are satisfactory to us we do not ask for each account to be paid to us by the account funds received." It was not until within the four-month period prior to bankruptcy that the bank proceeded to assert dominion

over the accounts receivable and to demand that the proceeds of collections be turned over to it.

In the Ratner case the borrowing corporation, more than four months before it was adjudged bankrupt, purported to make a general assignment of future accounts receivable as security for a loan. Under the agreement, the receivables were to be collected by the borrower. Until demand was made by the lender, the borrower, as in the case at bar, was not required to apply any collections to the repayment of the loan nor to account in any way to the lender, but was at liberty to use the proceeds of all accounts collected as it might see fit. The Supreme Court, in an opinion by Justice Brandeis, held, 268 U.S. at 360, 45 S.Ct. at 568, 69 L.Ed. 991, that under the law of New York "a transfer of property as security which reserves to the transferor the right to dispose of the same, or to apply the proceeds thereof, for his own uses, is, as to creditors, fraudulent in law and void"; and held, also as a matter of New York law, that the same rule was applicable to assignments of accounts receivable.

■ While there are no New Hampshire cases on this point involving accounts receivable, it seems to be clear, at least prior to the enactment of C. 262–A, that the New Hampshire courts recognized the rule, with regard to merchandise, that an understanding or agreement between a chattel mortgagor and mortgagee that the mortgagor shall be free to sell the chattels on his own account renders the mortgage void as to creditors. See In re Kibbie, D.C.D.N.H. 1934, 8 F.Supp. 809; In re Streeter, D.C. D.N.H.1927, 20 F.2d 157; Putnam v. Osgood, 1872, 52 N.H. 148. Section 1 of C. 262–A seems to have changed this rule so far as concerns the retention of dominion by a mortgagor of chattels,[4] and the New Hampshire court has accordingly held that the sale of merchandise without an obligation to account for the proceeds does not render invalid a factor's lien on the merchandise remaining in stock. Colbath v. Mechanicks National Bank of Concord, supra, 1950, 96 N.H. 110, 70 A.2d 608. In

the Ratner case itself, the Supreme Court observed that the provisions of § 45 of the N.Y.Pers.Prop.Law, substantially identical with § 1 of C. 262–A, N.H.Rev.Laws, might well have done away with the rule that retention of possession of chattels by the mortgagor with power of sale for his own benefit is fraudulent as to creditors, see 268 U.S. at 361, n. 11, 45 S.Ct. at 568, 69 L.Ed. 991, but such fraudulent conveyance doctrine was held to be still applicable so far as concerned the assignment of accounts receivable.

■ The legislature of New Hampshire seems to have chosen, in § 5 of C. 262–A, not to abrogate entirely the rule of Benedict v. Ratner but rather to qualify it, so as to render it inapplicable to certain extreme situations in which Benedict v. Ratner had been held applicable in other jurisdictions. The last sentence of § 5 provides: "If merchandise sold, or any part thereof, is returned to or recovered by the assignor from the person owing the account receivable and is thereafter dealt with by him as his own property, or if the assignor grants credits, allowances or adjustments to the person owing an account receivable, the right to or lien of the factor upon any balance remaining owing on such account receivable and his right to or lien upon any other account receivable assigned to him shall not be invalidated, irrespective of whether the factor shall have consented to the acts of the assignor." Certainly these restrictions upon the application of the rule of Benedict v. Ratner would have been superfluous, except upon the assumption that under the New Hampshire law retention by the borrower of dominion over his accounts receivable would render his purported assignment of such accounts void as against his creditors. See Koessler, New Legislation Affecting Non-Notification Financing of Accounts Receivable, 44 Mich.L.Rev. 563, 595–96, especially note 139 containing a comment upon a substantially identical provision of § 5, Laws of Mass.1945, C. 141.

The order of the District Court is affirmed.

---

4. See footnote 1 supra.